## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Dorrell Ingram,** | : |
| **30-46th Place, NE** | : |
| **Washington, D.C. 20019** | : |
| | : |
| **Plaintiff,** | : |
| | :  **Civil Action No. 05-2247 (PLF)** |
| v. | : |
| | : |
| **Ridley F. Durham, Jr.** | : |
| **c/o Forensic Science Division - MPD** | : |
| **3521 V Street, NE** | : |
| **Washington, D.C.** | : |
| **Defendant** | : |
| | : |

### AMENDED COMPLAINT

COMES NOW Plaintiff, Dorrell Ingram, through counsel, and sues Officer Ridley F. Durham, Jr. In his individual and official capacities.  In support thereof, Plaintiff alleges the following:

### Jurisdiction and Venue

1.      Jurisdiction in this Court in this Court is invoked pursuant to 42 U.S.C. §1983, specifically violations of the Fourth and Fifth Amendments to the U.S. Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.      Venue is proper in this Court because the incident complained of occurred in the District of Columbia.

### Parties

3.      Plaintiff, Dorrell Ingram ("Ingram"), is a resident of the District of Columbia.

-2-

4.      Dependant, Ridley F. Durham, Jr. ("Durham"), is and was at all times referenced herein acting as an employee and/or agent of the District of Columbia, employed as a police officer with the Forensic Science Division of the Metropolitan Police Department ("MPD"). He is being sued in his individual and official capacities.

### Facts

5.      On February 19, 2002 Ingram was arrested following a traffic accident at the intersection of 49th Street and Sheriff Road, NE, Washington, D.C.

6.      Ingram was subsequently indicted and charged with two counts of second degree murder arising out of the automobile accident. He was placed on no bond status and confined in the D.C. Jail.

7.      On July 12, 2002, the Honorable Shellie Bowers signed an Order requiring that Ingram submit  blood, saliva, and hair samples from his head so that his DNA could be compared to that found in the organic material recovered from the driver's side airbag of the car he was riding in at the time of the fatal collision.

8.      On or about August 15, 2002, Ingram provided the DNA samples. Detective Michael Miller took the samples to the Forensic Science Division of MPD and delivered them to Technician George Klein.

9.      Technician George Klein recorded Ingram's DNA samples in the Property Book, labeled and packaged them, then placed them in Durham's evidence bin.  Durham was the lead evidence technician on Ingram's criminal case.

10.      Upon information and belief, Durham received Ingram's DNA samples along with

-3-

other samples placed in his evidence bin on August 15, 2002. He was then required to submit the DNA samples to the FBI laboratory for analysis.

11.    Upon information and belief, Durham mishandled Ingram's DNA samples in violation of the standard operating procedures for the forensic unit, ultimately losing the samples altogether.

12.    Rather than inform his superiors, Detective Miller or the Assistant U.S. Attorney assigned to the criminal case about the DNA samples, upon information and belief, Durham engaged in a pattern of subterfuge and deception to hide his malfeasance.

13.    Between September 17, 2002 and October 15, 2002, Detective Miller and the Assistant U.S. Attorney made several unsuccessful attempts to reach Durham by telephone at his place of employment and left several messages for him inquiring about the status of the FBI analysis of Ingram's DNA samples. Durham did not return the telephone calls.

14.    Even though Durham knew he had not submitted the samples to the FBI and that he no longer had possession of the DNA samples, he never advised the Assistant U.S. Attorney of this fact until on or about October 23, 2002, over two months after he (Durham) retrieved the DNA samples from his evidence bin.

15.    At a Status Hearing on or about November 21, 2002, Ingram learned for the first time that his DNA samples were not sent to the FBI for analysis and that the samples could not be located.

16.    Judge Bowers granted the government's request to obtain a second set of DNA samples from Ingram and ordered his release from the D.C. jail.

-4-

17.    The DNA analysis ultimately excluded Ingram as the driver of the vehicle involved in the double fatality on February 19, 2002.

18.    On March 26, 2003, upon motion of the government, the Court dismissed all charges against Ingram.  The Court found by clear and convincing evidence that Ingram did not commit the charged offenses.

19.    Upon information and belief, Durham's intentional and/or reckless handling of Ingram's DNA samples resulted in his incarceration for a longer period of time.

### Count I - Civil Rights Violation (42 U.S.C. § 1983)

20.    Plaintiff incorporates by reference paragraphs 1-19 as if fully set forth herein.

21.    Durham intentionally or with reckless indifference destroyed or misplaced Ingram's DNA samples and concealed this information for several months, resulting in Ingram's extended incarceration.

22.    In handling Ingram's DNA evidence, Durham also violated his department's standard operating procedures.

23.    As a direct and proximate result of Durham's intentional or reckless actions and/or omissions, Ingram endured prolonged incarceration and suffered inconvenience, emotional distress, was prevented from engaging in his usual activities and pursuits, and he was otherwise damaged.

WHEREFORE, Plaintiff demands judgment against defendant as follows:

a.    Compensatory damages in an amount in excess of $75,000.00;

b.    Punitive damages in an amount in excess of $100,000.00;

-5-

c.      Statutory attorney's fees and costs; and

d.      Such other and further relief as this Court deems just and fear.

## Count II - Negligence

24.      Plaintiff incorporates by reference paragraphs 1-23 as if fully set forth herein.

25.      Durham had the duty and responsibility to handle Ingram's DNA samples in accordance with the standard operating procedures of his department, including ensuring that the DNA samples were submitted to the FBI for testing and analysis, as well as reporting the results to the lead MPD investigator and the Assistant U.S. Attorney assigned to Plaintiff's criminal case.

26.      Durham breached the duty of care when he failed to submit Plaintiff's DNA samples for testing to the FBI, destroyed, lost or misplaced the DNA samples, as well as concealed this information for several months, resulting in Ingram's extended incarceration.

27.      As a direct and proximate result of Durham's negligent actions and/or omissions, Ingram endured prolonged incarceration and suffered inconvenience, emotional distress, was prevented from engaging in his usual activities and pursuits, and he was otherwise damaged.

WHEREFORE, Plaintiff demands judgment against defendant as follows:

a.      Compensatory damages in an amount in excess of $75,000.00;

b.      Such other and further relief as this Court deems just and fear.

## Jury Demand

Plaintiff demands a trial by jury as to all issues so triable.

-6-

Respectfully submitted,

TEMPLE LAW OFFICES

By:     /s/ Jeanett P. Henry
        Donald M. Temple, [408749]
        Jeanett P. Henry, [411052]
        1229 15th Street, NW
        Washington, D.C. 20005
        (202)628-1101
        (202)628-1149 (facsimile)