UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DORRELL INGRAM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-2247 (PLF) |
| | ) | |
| | ) | |
| RIDLEY F. DURHAM, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT RIDLEY F. DURHAM'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant Ridley Durham, Jr., by and through the Office of the Attorney General, hereby moves this Court pursuant to Federal Rule of Civil Procedure 12 (b) (6) to dismiss the amended complaint.  In the alternative, the Defendant moves this Court pursuant to Rule 56 for an order entering judgment in his favor.  In support of this motion the Defendant states:

1.    Plaintiff's suit against the Defendant in his official capacity is barred by the doctrine of *res judicata.*

2.    Defendant is entitled to qualified immunity.

3.    Plaintiff's arrest and imprisonment was based on probable cause and, therefore, Plaintiff's Fourth Amendment rights were not violated by Defendant.

4.    Defendant did not violate Plaintiff's Fifth Amendment rights.

5.    Defendant owed no duty to Plaintiff and, therefore, Plaintiff's negligent claim is barred by the public duty rule.

In support of this motion the Defendant relies on the Memorandum of Points and Authorities that accompanies this motion.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the
District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/Nicole l. Lynch/s/
NICOLE L. LYNCH
Chief Civil Litigation Division Section II

/s/David A. Jackson/s/
DAVID A. JACKSON
Assistant Attorney General
Bar Number 471535
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DORRELL INGRAM                              )
                                            )
      Plaintiff,                     )
                                            )
v.                                          )    Civil Action No. 1:05-2247 (PLF)
                                            )
                                            )
RIDLEY F. DURHAM, JR.,                      )
                                            )
      Defendant.                     )
_____  )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT RIDLEY F. DURHAM'S MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**I.  PRELIMINARY STATEMENT**

      This case arises out of the arrest and subsequent detention of Plaintiff Dorrell Ingram on

or about February 19, 2002.  Amended Complaint, ¶ 5.  Pending before this Court is Plaintiff's

two count amended complaint (Count I, Civil Rights Violation, 42 U.S.C § 1983 and Count II,

Negligence) for money damages against Defendant Ridley F. Durham (hereinafter "Durham"), in

his individual and official capacity as a police officer in the Metropolitan Police Department's

Forensic Science Division. Amended Complaint.  Plaintiff alleges that Defendant violated his

constitutional rights under the Fourth and Fifth Amendments to the United States Constitution

and was negligent when Durham lost samples of Plaintiff's DNA.  According to the amended

complaint, after Durham received Plaintiff's DNA sample, Durham failed to submit the samples

to the FBI for analysis and then "engaged in a pattern of subterfuge and deception to hide his

malfeasance."  Amended Complaint ¶ 12.   Plaintiff claims that because of Durham's action,

Plaintiff's pretrial detention was extended by several months.  Amended Complaint ¶ 19.

3

## II.  PRIOR PROCEEDINGS

Initially, this civil action began when Plaintiff initiated suit against the District of Columbia and MPD officials, including MPD Officers Kimberly Metivier, Lester Taylor, Herman Hodges, Gregory Phifer, Michael Miller, Officer Purnell and Department of Corrections personnel Odie Washington and Correctional Officer Cooper, all in their individual and official capacities. *See* Complaint, C.A. No. 04-00505 (PLF). In that complaint, Plaintiff alleged that all defendants were liable to him for civil rights violations pursuant to 42 U.S.C. § 1983 (Count I), that Washington and Cooper denied him medical care and education in violation of 42 U.S.C. § 1983 (Count II), the District violated his rights under 42 U.S.C. § 1983 (Count III), he was falsely imprisoned by Metivier and Taylor (Count III) sic, all defendants intentionally inflicted emotional distress (Count IV), the District and Washington negligently supervised Cooper (Count V) and Plaintiff was maliciously prosecuted by all named defendants (Count VI).  That civil action arose out of the same set of operative facts as alleged in the instant action.

Similar to the allegations in this instant action, Plaintiff alleged in the prior complaint that "investigating officers intentionally or with reckless indifference destroyed, misplaced or lost [Plaintiff's] DNA sample and concealed this information from the Court …" C.A. No. 04-00505 (PLF). ¶18.  Although Plaintiff could have amended his complaint to include claims against Durham, he did not do so.[1]

In response to the complaint filed in Civil Action No. 04-00505 (PLF) the defendants filed a motion for summary judgment. C.A. No. 04-00505 (PLF) (Document 14).  Plaintiff did not oppose that motion.  On  January 19, 2006,  this Court granted the defendants' motion and entered a final appealable judgment in favor of all defendants. Exhibit 2.  Plaintiff did not appeal.

---

[1] While  C.A. 04-00505 was pending the parties exchanged discovery and Plaintiff's deposition was taken.

Thereafter, Plaintiff filed the present law suit against Durham in Durham's official and individual capacity.

### III.  RELEVANT FACTS

On February 19, 2002, Plaintiff was seated in a parked green Crown Victoria on Foote Street, NE, Washington. Pl's Depo. at 17.  In the car with Plaintiff were his twin brother Darrell Ingram and their friend Anthony Frantz. Pl's Depo.at 14.  According to Plaintiff, he was seated in the back seat on the driver's side. Pl's Depo. at 11.  Frantz was driving and Darrell was in the front passenger seat, Pl's Depo. at 15-18.  The car had been stolen by Frantz. Pl's Depo. at 17

Earlier in the day, three children had been struck by a car which fled the scene.[2]  The police believed that car involved in the hit and run had been abandoned and the occupants thereafter entered a green car. Pre. Hearing Tr. at 24.  The police were looking for a green car when they received a cell phone call in which the caller reported that the individuals in green Crown Victoria where involved in the earlier hit and run. Pre. Hearing Tr. at 19-24; Exhibit 7.

When the police approached the Crown Victoria with guns drawn, Frantz began to flee in the vehicle.  Exhibit 7.  First Frantz backed up and rammed the car behind him. Pl's Depo. at 18. Frantz then drove forward and struck the police car. Pl's Depo. at 20, Pre. Hearing Tr. at 27-28, 36.  Frantz then sped away at a high rate of speed. Pl's Depo. at 21-23; Exhibit 7.

When the car reached the intersection of 49th Street and Sheriff Road, NE,  it collided at a T-angle with another car that was occupied by other individuals.  Exhibit 7; Pre. Hearing Tr. at 9-10.  As a result of the collision, the two individuals in the other car were killed. Exhibit 7. Plaintiff sustained a cut to his head as a result of striking his head on the back of the driver's

---

[2] There was some speculation that the car involved in hit and run was a green Ford Marquis. Pre. Hearing Tr. at 25.

seat. Pl's deposition at 24-28, 34-35: Pre. Hearing Tr. at 15.  As a result of the collision, the air bag in the car in which Plaintiff was in deployed and blood was found on the airbag.

Immediately after the collision, Plaintiff was observed getting out of the Crown Victoria on the driver's side of the car and fleeing the scene.  Pl's Depo. at 24-26;  Pre. Hearing Tr. at 9-10.  Thus, the police believed that Plaintiff had been the driver. Exhibit 7; Pre. Hearing Tr. at 11-12.[3]  The police found a gun in the car under the seat where Plaintiff's brother had been sitting. Pl's Depo. at 32; Pre. Hearing Tr. at 13; Exhibit 7.

When Plaintiff ran from he scene he hid in some bushes. However, he emerged where police were. Pl's Depo. at 27-30; Exhibit 7.  Plaintiff told the police that he was not involved in accident. Pl's Depo. at 31.  Plaintiff was arrested and advised of his rights at the scene. Pl's Depo. at 33.  Although Plaintiff knew the charges against him he did not tell the police who was driving nor did he ask his twin brother to tell police who was driving. Pl's Depo. at 39-40.

Plaintiff was arrested and charged as a juvenile but later he was that charged as an adult on two counts of second degree murder.  Amended Complaint ¶ 6; Pl's Depo. at 33-36; Pre. Hearing Tr. at 71-75.  Thereafter, Plaintiff was held in custody.

On or about March 15, 2002, Plaintiff appeared before the Honorable Shellie Bowers for a preventive detention hearing. Judge Brower found "substantial probability that Plaintiff committed the offense of second degree murder" and ordered Plaintiff to be held without bail. Pre. Hearing Tr. at 71-75.

Durham was not one of the police officers on the scene on the evening of February 19, 2002.  He did not participate in the search or arrest of Plaintiff.  Durham did not testify at the March 15, 2002 detention hearing.

---

[3] The police later determined that Frantz was the driver.

On July 12, 2002, Judge Bowers signed an order for Plaintiff to produce DNA samples from Plaintiff's hair, salvia and blood.  Amended Complaint ¶ 7; Exhibit 4.  The purpose of the DNA was to match Plaintiff's DNA against the DNA from the blood found on the air bag of the Crown Victoria to determine who was the driver of the car.  Judge Bowers order stated " … the Court having found probable cause to believe that the blood sample, salvia sample and pulled head hair samples will produce evidence of [Plaintiff's] involvement in the crime charges …" Exhibit 4.

Plaintiff provided his DNA on or about August 15, 2002.  Amended Complaint ¶ 8. According to Plaintiff, his  DNA was entrusted to the custody of Durham for submission to the FBI for analysis. Amended Complaint ¶¶ 9-10.  Plaintiff alleges that Durham lost or misplaced the DNA samples and, thereafter, withheld this information from prosecutors. Amended Complaint ¶ 14.  On November 11, 2002, Judge Bowers signed a second order which required Plaintiff to submitted blood, saliva and hair samples for DNA testing. Exhibit 5.  Plaintiff's DNA did not match the DNA from the blood on the air bag. Plaintiff was released on November 18, 2002 but Plaintiff was placed on intensive supervision and ordered to participate in the electronic monitoring program by the US Attorney's Office.  Exhibit 6.

In this case, Plaintiff is claiming that if Durham did not lose or misplace the first DNA sample he would have been released prior to November 18, 2002.  Thus, Plaintiff claims that Durham violated his Fourth and Fifth Amendment rights and was negligent.

### IV.  STANDARD OF REVIEW

**A.  Motion to Dismiss**

In reviewing the sufficiency of a complaint pursuant to Fed R. Civ. P. 12(b)(6), a court must consider the facts presented in the pleading as true and construe them and all reasonable inferences in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and citing *Gardner v. Toilet Goods Assn.,* 387 U.S. 167, 172 (1967)). The court need not consider inferences that are unsupported by the facts or legal conclusions framed as facts. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The motion can be granted, and the complaint dismissed, only if no relief could be granted upon those facts. *Id.*

## B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Alexis v. District of Columbia*, 44 F. Supp. 331, 337 (D.D.C. 1999); *Celotex*, 477 U.S. at 323. Material facts relate to the substantive law governing the case and are those facts which would affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact for trial. *Alexis,* 44 F. Supp. at 337. The opposing party must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail." *Id.* The trial court must enter

summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *see also Alexis*, 44 F. Supp. at 337 ("Rule 56(c) *mandates* summary judgment" in this circumstance) (emphasis added).

A party may defeat a properly-supported summary judgment motion only by providing a "response, by affidavits or as otherwise provided in this Rule, [setting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Rule 56(e) directs that summary judgment "shall be entered against the adverse party" if that party fails to raise a genuine issue for trial. *See Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *see also Celotex*, 477 U.S. at 324 ("a party who fails to make a showing sufficient to establish the existence of an element essential to establish that party's case, and on which that party will bear the burden at trial" cannot withstand a motion for summary judgment).

## V. ARGUMENT

**A.     Plaintiff's claims against Durham in his official capacity are barred by the doctrine of *res judicata*.**

In this case, Plaintiff has sued Durham in his official capacity pursuant to 42 U.S.C. § 1983 for alleged violation of Plaintiff's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution. Plaintiff's claims against Durham in his official capacity are barred by the doctrine of *res judicata*. It is well settled that a law suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 468 U.S. 464 (1985)). This is equally true of §1983 suits against municipal officials in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

(§1983 action against government official in official capacity is simply "another way of pleading an action against an entity of which an officer is an agent."); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *Czajkowski v. City of Chicago*, 810 F. Supp. 1428, 1431 (N.D. Ill. 1992)(court sua sponte dismissed all official capacity claims against all government official defendants since City of Chicago named as defendant in § 1983 complaint); *Orange v. Suffolk County*, 830 F. Supp. 701, 706-07 (E.D.N.Y. 1993) (dismissing § 1983 claims against Suffolk County officials in their official capacities); *Kohn v. Mucia*, 776 F. Supp. 348, 355-56 (N.D. Ill. 1991).

Therefore, to the extent that Durham is sued in his official capacity, the real party in interest is the District of Columbia. *Johnson v. The District of Columbia, et al*., 2005 U.S. Dist. 16918 (Collyer, J.). Since a final judgment has been entered in a prior action involving Plaintiff and the District, C.A. No. 04-00505, and arising out of the same set of operative facts as set forth in the instant action Plaintiff's claims against Durham in his official capacity are barred by the doctrine of *res judicata*.

Under the doctrine of *res judicata*, "when a final judgment has been entered on the merits of a case, 'it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States*, 463 U.S. 110, 129-130 (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L. Ed. 195 (1877)). The doctrine of *res judicata* precludes a plaintiff from bringing against the same party a second action asserting new claims that arise out of the same events that gave rise to the first action. See *Nevada v. United States*, 463 U.S. 110, 129-130, 77 L. Ed. 2d 509, 103 S. Ct. 2906 (1983) ("when a final judgment has been entered on the

merits of a case, 'it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every other matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose'") (quoting *Cromwell v. County of Sac.*, 94 U.S. 351, 352, 24 L. Ed. 195 (1876)); *Brown v. Felsen*, 442 U.S. 127, 131, 60 L. Ed. 2d 767, 99 S. Ct. 2205 (1979) ("*res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding") (citations omitted); Restatement (Second) of Judgments § 24 (1982).

In *Johnson*, *supra*, (Johnson II), plaintiff police officer sued the District and a fellow police officer in his official capacity. The plaintiff alleged that the defendant police officer used excessive force when plaintiff was kicked in the groin by the defendant police officer when the defendant officer chased a drug suspect who fled into plaintiff's apartment. *Johnson*, 2005 U.S. Dist. 16918. Plaintiff had filed an earlier suit against the District (Johnson I) and both suits arose out of the same set of operative facts.

Similarly, as in the instant case, in *Johnson I*, the defendants file a summary judgment motion and plaintiff did not oppose it. Thereafter, the court granted judgment in favor of the defendants. In *Johnson II*, the court dismissed the duplicative claims against the District of Columbia and against defendant police officer in his official capacity. The court reasoned that since the official capacity suit was a suit against the District, plaintiff's claims in Johnson II were barred by the doctrine of *res judicata. Johnson*, 2005 U.S. Dist. 16918.

Here, the claims in Plaintiff's initial suit, C.A. No. 04-00505, and the instant case are the same. In C.A. No. 04-00505, Plaintiff alleged that "investigating officers intentionally or with reckless indifference destroyed, misplaced or lost [Plaintiff's] DNA sample and concealed this

information from the Court …" C.A. No. 04-00505 (PLF). ¶18.  Plaintiff's reference to "investigation officers" would include Durham. In this case, Plaintiff alleges that Durham violated his constitutional rights and was negligent when Durham lost samples of Plaintiff's DNA and, thereafter, "engaged in a pattern of subterfuge and deception to hide his malfeasance." Amended Complaint ¶ 12.

In C.A. No. 04-00505, a final appealable judgment was entered in favor of the District and, therefore, the judgment applies to claims against Durham in his official capacity.  Summary judgment is a final order for the purposes of *res judiciata*. *See, Prakash v. American University*, 727 F.2d 1174, 1182 (.C. cir. 1984).  Furthermore, both C.A. No. 04-00505 and the instant case involve the same parties.  Plaintiff is the complaining party in both cases.  The District and "investigating officers", which includes Durham, are defendants in both civil actions.  Also, both cases arise out of the same set of operative facts.  Since a final appealable judgment has been entered in C.A. No. 04-00505 (PLF), Plaintiff's claims in the instant action against Durham in his official capacity (i.e., Plaintiff's §1983 claim and the negligence claim)  are barred under the doctrine of *res judicata*.

**B.    Durham is entitled to qualified immunity.**

Plaintiff claims that Durham violated his rights under the Fourth and Fifth Amendments to the United States Constitution and under Title 42 U.S.C. § 1983.  Durham is entitled to qualified immunity because he did not violate a clearly establish constitutional right.

A police officer enjoys a qualified immunity under law in the performance of his uties, and maintains his cloak of immunity as long as his actions could reasonably have been thought to be consistent with the rights he is alleged to have violated.  *Anderson v. Creighton*, 483 U. S. 637, 638 (1987); accord, *Evans*, 644 A.2d. at 1014-15.  Qualified immunity protects all police

officers, except those who are plainly incompetent or who knowingly violate the law in the performance of their duties.  *Malley v. Briggs*, 475 U. S. 335, 341(1986).  Police officers are immune from liability unless the law clearly proscribes the action taken by the officer.  *Mitchell v. Forsyth,* 472 U. S. 511, 528 (1985).   Whether a defendant may be found individually liable for alleged malfeasance in contravention of established law turns on a test of objective reasonableness.  *Harlow v. Fitzgerald*, 457 U. S.  800, 819 (1982).

Qualified immunity is an immunity from suit and not merely a defense; it shields government officials performing discretionary functions from liability for actions brought under 42 U.S.C. 1983, provided that their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" *Saucier v. Katz*, 533 U.S. 194, 200 (2001)**.**

The Supreme Court has recognized that qualified immunity protects from suit "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, (1986).   Police officers, specifically, should not have to refrain from performing their duties to the best of their abilities for concerns of civil liability, unless they are violating a clearly established right. *District of Columbia v. Evans*, 644 A.2d 1008, 1016 (D.C. 1994).  The issue of whether an officer is entitled to qualified immunity is a question of law to be determined by the trial court. *District of Columbia v. Jackson,* 810 A.2d 388, 393-94 (D.C. 2002).

Qualified immunity dismissals are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The Supreme Court has consistently "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (internal quotations marks omitted).  In fact, qualified immunity is an affirmative defense of such great importance that it is appealable immediately after summary judgment proceedings.  *See Mitchell v. Forsyth*, 472 U.S. 511 (1985).

To determine if a government officer is entitled to qualified immunity, a two-fold inquiry is required. *Brosseau v. Haugen*, 125 S.Ct. 596, 602-03 (2004).  The threshold inquiry is whether plaintiff's allegations, if true, show that an officer's conduct violated a constitutional or statutory right.  *Id.*  If the conduct did violate a right, then a court should decide whether the right had been clearly established at the time of the alleged violation.  *Id.*; *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004).  Liability attaches to the official if he violated a right whose contours were sufficiently clear that a reasonable official would understand that what she was doing violated that right.  *United States v. Lanier*, 520 U.S. 259, 270 (1997).

Thus, the inquiry of whether a right was clearly established at the time of the purported violation "must be undertaken in light of the specific context of the case, and not as a broad, general proposition."  *Saucier*, 533 U.S. at 201.  In order to determine what is required for a particular right to be "clearly established" in the context of qualified immunity, the Court in *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), stated that:

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth,* 472 U.S. 511, 535 n.12], but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

14

"The salient question" for a court [ ] is "whether the state of the law [at the time of the state action] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Id.* As case law has shown, Plaintiff cannot simply claim that his constitutional rights were violated without showing that Durham's conduct in handling Plaintiff's DNA has been clearly established as unconstitutional. *Brosseau*, 125 S.Ct. at 602-03.

Applying these principles, to this case, it is clear that Durham is entitled to qualified immunity because he did not violated a clearly established right.

### i.     Plaintiff cannot establish that Durham violated his Fourth Amendment rights.

Plaintiff's claim that Durham violated his Fourth Amendment right should be dismissed because arrest and imprisonment was based on probable cause. The Fourth Amendment prohibits the arrest and seizure of a person "but upon probable cause." U.S. Constitution, Amendment IV. Thus, an arrest based on probable cause is legally justified and a police officer cannot be held liable. *Saidi v. Washington Metropolitan Area Transit Authority*, 1996 U.S. Dict. LEXIS 7399. (The police officer had qualified immunity to the false arrest and imprisonment, malicious prosecution and §1983 claims since there was probable cause for the arrest). Likewise, when a person is imprisoned following a lawful arrest a claim for false imprisonment cannot be maintained against the police. *Id.*; *See, Lyles, et al. v. Micenko, et al*., 2006 U.S. Dist. 44260 ("The existence of probable cause for the arrest or imprisonment is a valid defense to a claim of false arrest or imprisonment."); *Hedgepeth v. Washington Metropolitan Transit Authority*, et al., 386 F.3d 1148, 1159 (D.C. Cir. 2004) (A court cannot inquire further into the reasonableness of a decision to arrest when it is supported by probable cause).

Additionally, once probable cause if found, the police have no duty to investigate and look for exculpatory evidence. *Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002) ("failure to pursue exculpatory lead is not sufficient to negate probable cause"); *Dahl v. Holley*, 312 F. 3d 1228, 1234 (11th Cir. 2002) (Arresting officers, in deciding whether probable cause exists are not required to sift through conflicting evidence or resolve issues of credibility); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("once probable cause is established, an officer is under no duty to investigate further to look for additional evidence that may exculpate the accused"). In this case, there was probable cause for the arrest and subsequent imprisonment of Plaintiff and, therefore, Plaintiff cannot establish that Durham violated a clearly established constitutional right under the Fourth Amendment.

First and foremost, Plaintiff's Fourth Amendment claim against Durham must fail because Durham was not involved in the apprehension and arrest of Plaintiff on February 19, 2002. Durham did not participate in the detention hearing held on March 15, 2002. Moreover, the instant Amended Complaint sets forth not facts to support a Fourth Amendment claim against Durham. (See Complaint generall).

Assuming, that Plaintiff is claiming that his imprisonment after submitting the DNA samples on August 15, 2002 was unconstitutional, this claim will fail because Plaintiff's imprisonment was based on probable cause. It is undisputed that Plaintiff was in a stolen car on February 19, 2002. The driver of the car rammed two cars, including a police vehicle as the car fled the scene at a high rate of speed. Pl's Depo. at 20-23; Pre. Hearing Tr. at 27-28, 36. Tragically, the car Plaintiff was in collided with another car at the intersection of 49th Street and Sheriff Road, NE, killing the occupants. Plaintiff sustained a cut to his head as a result of striking his head on the back of the driver's seat. Pl's Depo. at 24-28, 34-35; Pre. Hearing Tr. at

15.  As a result of the collision, the air bag in the car in which Plaintiff was in deployed and blood was found on the airbag.

Immediately after the collision Plaintiff was observed getting out of the Crown Victoria on the driver's side of the car and fled the scene.  Pl's Depo. at 24-26; Pre. Hearing Tr. at 9-10. Thus, the police believed in good faith that Plaintiff had been the driver. Pre. Hearing Tr. at 11-12.  The police found a gun in the car under the seat where Plaintiff's brother had been sitting. Pl's Depo. at 32; Pre. Hearing Tr. at 13.  When Plaintiff was arrested he did not tell the police who had been driving nor did he ask his twin brother to tell police who was driving. Pl's Depo. at 39-40.  Upon these facts, Judge Brower found "substantial probability that Plaintiff committed the offense of second degree murder" and ordered Plaintiff held without bail. Pre. Hearing Tr. at 71-75.  Thus, Plaintiff's detention was based upon a judicial finding of probable cause.

Plaintiff's claim that he would have been release from custody prior to November 18, 2002 is purely speculative.  Plaintiff does not allege that between August 15, 2002 and November 18, 2002 he was denied release from custody because of the lack of DNA results.

Since Plaintiff will be unable to establish that Durham violated his Fourth Amendment rights, Durham is entitled to qualified immunity.

**ii.    Plaintiff cannot establish that Durham violated his Fifth Amendment rights.**

Plaintiff fails to allege a Fifth Amendment Due Process violation under 42 U.S.C. § 1983

42 U.S.C. §1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  §1983 imposes liability for

violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Preston v. District of Columbia,* 802 F.2d 1478, 1479 (D.C. 1986) (*citing Baker v. McCollan,* 443 U.S. 137, 146, (1979)) (emphasis added); *see also Pitchell v. Callan* 13 F.3d 545, 546 (2nd Cir. 1994) (holding that in any case asserted under §1983, the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.). The Fifth Amendment protects people against deprivation of "life, liberty, or property with out due process of law." U.S. Const. Amend V.

Generally, "police do not have a constitutional duty to perform any particular test" on evidence gather during the course of a criminal investigation. *Arizona v. Youngblood,* 488 U.S. 51, 55-59 (1988). In *California v. Trombetta*, the Supreme Court considered whether the constitution imposed a duty upon the state to preserve evidence. 467 U.S. 479 (1981). The Supreme Court stated that the constitutional duty to preserve evidence was "limited to evidence that might be expected to play a significant role in the suspect's defense. *Id.* at 488-489. In order to meet this constitutional standard a criminal defendant must show bad faith on the part of the government in the destroying the evidence, the evidence must both possess an exculpatory value apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." *Id.* To establish bad faith a criminal defendant "must show official animus or a conscious effort to suppress exculpatory evidence." *Jones v. McCaughtry*, 965 F.2d 473, 476 (7th Cir. 1992).

Applying these principles to the instant case, Plaintiff cannot establish a due process violation. As the Court in *McCaughtry* stated, "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence before it is lost or destroyed." *Id. at 477.* In this case, it

is clear that the exculpatory value of Plaintiff's DNA was not known to Durham nor was it apparent before it was allegedly lost. Plaintiff's alleges that Durham lost the DNA samples not the DNA test results.   Without the DNA test results Durham could not have known the exculpatory nature of Plaintiff's blood, salvia and hair samples.   Additionally, Plaintiff cannot show bad faith because there is no evidence nor does Plaintiff allege that Durham harbored any ill will towards Plaintiff.   Moreover, Plaintiff does not even allege that Durham knew Plaintiff, the two victims or any of the people involved in the hit-and-run incident. There is simply no evidence that Durham acted out of spite or ill will towards Plaintiff.

Moreover, the DNA order signed by Judge Bower indicated "that the blood sample, salvia sample and pulled head hair samples will produce evidence of [Plaintiff's] involvement in the crime charged …"   Exhibit 4.   Thus, all Durham knew at the time the DNA was in his possession was that the DNA would help to convict Plaintiff of the crimes charged.   Since the DNA test had not been performed at the time the samples were lost, it exculpatory value was not known to Durham.

Plaintiff cannot show that his DNA was of such a nature that he was unable to obtain comparable evidence by other reasonable means.   Clearly that is not the case here.   Plaintiff himself said that he gave a second DNA sample after the first sample was allegedly lost.   DNA can easily be extracted from the body at any given time.

Plaintiff cannot make out a due process violation and therefore, his Fifth Amendment claim should be dismissed.

**C.     Plaintiff's negligence claim is absolutely barred by the public duty doctrine**.

Plaintiffs' negligence claim is barred, in its entirety, by the public duty doctrine.   The D.C. Court of Appeals repeatedly has emphasized "the fundamental principle that a government

and its agents are under no general duty to provide public services … to any particular individual citizen." *District of Columbia v. Forsman*, 580 A.2d 1314, 1317 (D.C. 1990) (quoting *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C. 1981) (*en banc*). According to the public duty doctrine:

> the District is subject to liability for injuries arising from the negligence of its employees only if the duty owed to the plaintiff was a special duty to that person as an individual or as a member of a class of persons to whom a special duty is owed; the District cannot be sued if the duty it owed was a general duty to the public-at-large.

Auto World, Inc. v. District of Columbia, 627 A.2d 11, 13 (D.C. 1993) (quoting Powell v. District of Columbia, 602 A.2d 1123, 1127 (D.C. 1992)); see Miller v. District of Columbia, 841 A.2d 1244 (D.C. 2004).

The public duty doctrine applies to all public services that are designed to benefit the public-at-large, rather than a discrete group of individuals. The "purpose of the public duty doctrine is to shield the District and its employees from liability associated with providing 'public services.'" *Powell v. District of Columbia*, 602 A.2d 1123, 1125 (D.C. 1992) (quoting *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990)). This protection is vitally important to the government's ability to provide beneficial services to the public-at-large. The doctrine is designed "to protect municipalities against what would be an overwhelming tide of liability if local governments were liable for mishaps which occur during the provision of public services." *Joy v. Bell Helicopter Textron*, Nos. 88-2165, 88-2351, 88-2352, 88-3012, 1991 U.S. Dist. Lexis 2193 (D.D.C. 1991).

The D.C. District Court, quoting the D.C. Court of Appeals, explained the risk of allowing private individuals to recover for negligent delivery of public services, writing:

> "[i]f the public duty doctrine did not exist: then the city would be potentially liable for every oversight, omission, or blunder of its

20

> officials – a blunder which potentially could so deplete the resources
> necessary to provide police protection, fire protection, and ambulance
> service as to result in the elimination of those services altogether."

*Joy*, 1991 U.S. Dist. Lexis 2193 (quoting *Warner v. District of Columbia*, 580 A.2d 127, 132

(D.C. 1990)).

Here, the negligence alleged by the Plaintiff falls squarely within the crosshairs of the

public duty doctrine and his claim clearly is barred.  The Plaintiff's lawsuit arises out of

allegations that Durham lost his DNA sample.   Durham owed no duty to Plaintiff.  As a police

officer, Durham's duty was to the public at large.  A police officer is charged with the

responsibility for protecting the community against law violators.  Police officers owe no duty to

those lawfully arrested, such as Plaintiff in this case, to search for exculpatory evidence.   The

process of collecting and gathering evidence is not to benefit any particular class or subsection of

the community but rather the purpose is to protect the public-at-large.    Thus, Plaintiff's claim

for negligence is barred by the public duty doctrine.

                                        Respectfully submitted,

                                        LINDA SINGER
                                        Acting Attorney General for the
                                        District of Columbia

                                        GEORGE VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        /s/Nicole l. Lynch/s/_____
                                        NICOLE L. LYNCH
                                        Chief Civil Litigation Division Section II

/s/David A. Jackson/s/
DAVID A. JACKSON
Assistant Attorney General
Bar Number 471535
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov